between the provisions of the will and the agreement are apparent.

It is held in cases in which the status of a surviving spouse unquestionably exists that a separation agreement can bar the assertion of normal rights against an estate (*Matter of Wallace*, 184 Misc. 448, affd. 268 App. Div. 1029; *Matter of Burridge*, 261 N. Y. 225; *Matter of Hagen*, 119 Misc. 770, affd. 206 App. Div. 682; *Titus* v. *Bassi*, 182 App. Div. 387; *Matter of Gilmour*, 146 Misc. 113). Here the individual referred to in the will as " wife " does not have the status of surviving spouse. Irrespective of the separation agreement and solely by reason of the divorce she can assert no claim as surviving spouse. Her claim is that, despite the separation agreement, testator intended the provisions of his will to remain effective for her benefit and that his failure to revoke or modify the will in the very brief interval between the execution of the agreement and his death shows that he considered her a proper object of his bounty. Such an intention cannot be found in the instruments before the court or in the circumstances surrounding their execution. The limited provisions for the wife in the will, the terms of the separation agreement, the destruction of the marriage bond by divorce and the fact that upon deceased's death the divorced wife was not a distributee all are elements that distinguish this case on its facts from *Matter of Cote* (195 Misc. 410).

The court holds that the provisions in the will for the benefit of the divorced wife of the testator are inoperative. The once contemplated gifts to the wife will augment the residuary estate.

The court now grants the motions to strike out the testimony and exhibits that were received in evidence subject to rulings upon objections (*Matter of Ittleson*, 197 Misc. 786, 789, and cases there cited).

Submit decree on notice.

HAZEL MOSHER, Plaintiff, *v.* WALTER WRIGHT, as Executor of BELVADERE W. S. DREW, Deceased, et al., Defendants.

Supreme Court, Special Term, Albany County, April 10, 1951.

*Warren C. Kimmey* for Howard F. Salisbury, defendent.

*Bender, Ford, Benson & Comstock* for executor, defendant.

*John F. O'Brien,* special guardian in person, and *John Ross,* for Sandra Salisbury and others, infants, defendants.

TAYLOR, J. Belvadere W. S. Drew died leaving a last will and testament which was admitted to probate by the Surrogate's Court of Albany County on January 17, 1947, which *inter alia* devised a life estate to her son, Howard Francis Salisbury, in premises known as 323 Delaware Avenue, Delmar, New York, with the remainder therein to the four infant children of her said son living at the time of his death. Her husband elected to take against the provisions of that will and, in order to

satisfy that election and to pay the debts of the deceased, the executor under the will and the life tenant mortgaged the premises to one Hazel E. Mosher who, upon default by the latter in complying with the terms of the mortgage, instituted an action to foreclose it. Upon the sale pursuant to the judgment of foreclosure and sale in that action, there have arisen surplus moneys in the amount of $3,032.40 which have been deposited to the credit of the action. A referee has been appointed by the court to ascertain the amounts due the life tenant, who has applied for the award of the sum in gross, and other persons interested therein. He has reported that the present value of the life estate exceeds the entire amount of the surplus moneys and has found that payment thereof should be made to the life tenant pursuant to his application therefor after the payment of sums to two judgment creditors who have proved their claims. To confirm that report, this motion has been brought. A special guardian acting in behalf of the infant remaindermen opposes the confirmation of the report, as does the executor named in the will, although it is not apparent to me what interest the latter, as such, has in the disposition of the proceeds since they retain the character of real property.

Section 1082-a of the Civil Practice Act enacted in 1947 (L. 1947, ch. 849) reads as follows: " § 1082-a. *Surplus moneys: share of particular tenant therein.* When surplus moneys have resulted from a sale in an action to foreclose a mortgage, and the property sold has included a right to dower, whether inchoate or consummate, a tenancy by curtesy, or any other estate for life or years, the owner of such particular estate in the real property sold is entitled to receive from the surplus, in satisfaction of his estate or interest, either a sum in gross or the earnings of a sum invested for his benefit. The determination as to whether a sum in gross or the earnings of a sum invested shall be awarded to the owner of such particular estate shall be governed by the provisions of section ten hundred fifty-three-a of the civil practice act with respect to the proceeds of a sale in partition." Section 1053-a of the Civil Practice Act enacted at the same time as the prior section provides as follows: " § 1053-a. *Location of power to elect the payment of a sum in gross in satisfaction of a particular estate.* Whenever the whole or a part of the proceeds of a sale ordered in an action for partition represents the interest of a particular estate, such as a right to dower, whether inchoate or consummate, tenancy by curtesy, or any other estate for life or for years, and also

represents one or more other interests subsequent thereto, the power to determine whether the owner of the particular estate shall receive, in satisfaction of his estate or interest, a sum in gross or shall receive the earnings of a sum invested for his benefit, rests in the discretion of the court, except that if all parties affected shall have agreed either to the payment of a sum in gross or the investment of the proceeds the court shall, by order, give effect to such agreement. In the exercise of the court's discretion, the application of the owner of any such particular estate for the award of a sum in gross shall be granted unless the court finds that unreasonable hardship is likely to be caused thereby to the owner of some other interest in the affected real property. The application for the award of a sum in gross by the owner of some interest in the affected real property other than the owner of the particular estate shall be granted if the court finds that the granting of such application is equitable under the circumstances.

'' The provisions of this section shall also apply to any action or proceeding, other than partition, when the statute concerning such action or proceeding now or hereafter provides that the disposition of money realized on a sale in such action or proceeding shall be governed by the rules applicable to the disposition of money realized on a sale in partition.''

These sections were enacted on the recommendation of the Law Revision Commission to relieve the uncertainty of prior existing law. (1947 Report of N. Y. Law Revision Commission, p. 307 *et seq.*) It is clear that under the provisions of these statutes when the lump sum method is applied for by a life tenant, the court is required to accede to such request '' unless * * * unreasonable hardship is likely to be caused thereby to the owner of some other interest in the affected real property.''

The adoption of the method which the life tenant here seeks will transfer to him the entire fund. This is not a situation where the withdrawal of the value of a life estate will leave a balance which, with accumulated interest over the period of the life tenant's expectancy, will restore the fund to its present corpus for the remaindermen. If the referee's report is confirmed, the interest of the infant remaindermen therein will be completely defeated and eliminated by such action. That result is recognized by the life tenant but he seeks to justify it because he is their parent and will expend the entire fund which he would receive as a partial payment for the purchase of premises

where they will live with him thereby relieving his and, incidentally, their present housing shortage difficulties. The showing here does not warrant such optimism. He was unable apparently to preserve the premises which were devised to him for life from the fatality of an early mortgage foreclosure and no reason is satisfactorily presented that any different result can be expected reasonably in a similar situation. If he receives the funds as he proposes, the likelihood of the hardship to the infant remaindermen which the Legislature has foreseen in the enactment of the statute is obvious. Instead of having the fund intact when the remaindermen, or one or more of them, will be entitled to receive it upon the parent's death by preservation of its present corpus, it will be received entirely by the life tenant at the present time and may be expended in his discretion without limitation or bequeathed to others than to them. I do not believe that the Legislature intended the statute to permit such a result. Sound judicial discretion, I think, requires that the application be denied, that the funds be invested for the benefit of the life tenant during his life with the remainder payable to the living remaindermen pursuant to the terms of the decedent's will upon his death.

No allowances will be made to any party except the special guardian and the referee which will be fixed upon the settlement of the order herein upon five days' notice.

Submit order accordingly.